Richard Q. Liu (SBN 308050)
Sijiu Ren (SBN 332947)
Innovative Legal Services, P.C.
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Tel: 626.344.8949
Richard.liu@consultils.com
Sean.ren@consultils.com

*Attorneys for Plaintiff Jingdong Logistics United States Company*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jingdong Logistics United States Company, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Ready Acquisition, Inc. d/b/a Ready Go Ventures, a New York corporation; Gregory Lawrance, a New Hampshire resident; James Gunter, a New Hampshire resident, and DOE ONE through and including DOE FIFTY,<br><br>Defendants. | Case No:<br><br>**COMPLAINT**<br>1. Breach of Contract<br>2. Breach of Implied Covenant of Good Faith and Fair Dealing<br>3. Unjust Enrichment |

Plaintiff Jingdong Logistics United States Company ("JD" or the "Plaintiff") hereby makes the following allegations against Defendant Ready Acquisition, Inc. d/b/a Ready Go Ventures ("RGV"), Defendant Gregory Lawrance ("Lawrance"), Defendant James Gunter ("Gunter") (collectively as "Defendants"):

## THE PARTIES

1. JD is a Delaware-incorporated company headquartered in Fontana, California, with its principal place of business located at 13200 Loop Road, Fontana, CA 92337.

2. Defendant RGV is incorporated in the State of New York, registered as a foreign corporation in the State of New Hampshire, and also resides its principal place of business in the State of New Hampshire.

3. Defendant Lawrance is an individual who, during the time periods relevant to this Complaint, was and is a resident of the State of New Hampshire.

4. Defendant Lawrance is the actual owner, Director, President, and Chief Executive Officer of Defendant RGV.

5. Defendant Gunter is an individual who, during the time period relevant to this Complaint, was and is a resident of the State of New Hampshire. Defendant Gunter is the actual owner, Director, and Chief Operating Officer of Defendant RGV.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a).

7. The venue is proper under 28 U.S.C. §1391(b)(2).

8. The venue is also proper pursuant to the forum selection clause in the agreement between the parties (Section 12 of the Domestic Logistics Service Agreement).

## GENERAL ALLEGATIONS

### JD's Business Relationship with Defendant RGV

9. JD is an industry-leading company that provides logistics services to clients.

10. Defendant RGV is a sophisticated trading company that sells various products, including without limitation, T-shirts and caps.

11. On or around June 23, 2021, JD and Defendant RGV entered into a Domestic Logistics Service Agreement (the "Service Agreement"). A true and correct copy of the Service Agreement is attached hereto as **Exhibit 1**.

12. Pursuant to the Service Agreement, JD will provide logistics-related services such as warehousing, shipping, delivery, and customs clearance for Defendant RGV. Ex. 1 § 1.

13. In particular, JD will store Defendant RGV's goods and products ("RGV Good") in its warehouse, and ship RGV Goods for Defendant RGV upon request.

14. In exchange for receiving JD's services, Defendant RGV "shall pay" JD the fees of the [s]ervices . . . based on the rate agreed to by both parties in writing prior to [JD]'s provision of the [s]ervices." Ex. 1 § 3.1.

15. The Service Agreement further provides that Defendant RGV "shall pay the [f]ees within fifteen (15) days following the date of the applicable invoice." Ex. 1 § 3.4.

16. "In the event of an invoice amount dispute, [Defendant RGV] shall notify [JD] such dispute within five (5) days following the receipt of such invoice, otherwise [Defendant RGV] shall be deemed to agree with the invoice amount." Ex. 1. § 3.4.

17. "[Defendant RGV] shall pay interest on all late payments at the lessor of the rate of point one percent (0.1%) per day or the highest rate permissible under applicable law, calculated and compounded daily from the date due until paid in full." Ex. 1 § 3.5.

18. "[Defendant RGV] shall reimburse [JD] for all costs incurred in collecting any late payment, including, without limitation, attorneys' fees." Ex. 1 § 3.5.

19. In the event of a party claiming damages, the Service Agreement further provides that "[b]oth parties shall in no case be liable for any loss of profit, loss of sales, loss of market, loss of reputation, third party claims, incidental or special damages or indirect or consequential loss of any kind." Ex. 1 § 5.5.

20. As of the filing of this Complaint, Defendant RGV is still receiving services provided by JD under the Service Agreement, such as warehousing and safekeeping of RGV Goods.

**Defendant RGV's Material Default Under the Service Agreement.**

21. Upon signing and executing the Service Agreement, JD has been performing all of its obligations under the Service Agreement.

22. Up and until December 2021, Defendant RGV had paid for all invoices as issued by JD pursuant to the terms of the Service Agreement.

23. However, starting from December 2021, Defendant RGV had not been making payments for the services provided by JD.

24. On or around April 27, 2022, JD sent out a Notice of Default on Service Fees to Defendant RGV to request payments from Defendant RGV. **Exhibit 2**.

25. On or around May 23, 2022, JD sent out a Second Notice of Default on Service Fees to request payments from Defendant RGV. **Exhibit 3**.

COMPLAINT
5

26. As of June 21, 2022, Defendant RGV had incurred a total unpaid invoice amount of approximately $137,933.83, late fees of $11,958.83, and interests of $3,464.95.

27. JD's damages are accruing as Defendant RGV continues to use JD's services and continues to withhold payments to JD.

## **ALTER EGO ALLEGATIONS**

28. JD is informed and believes and based thereon alleges that Defendant Lawrance and Defendant Gunter are, at all relevant times, the alter ego of Defendant RGV.

29. Upon information and belief, Defendant Lawrance and Defendant Gunter, at all times mentioned herein, dominate, influence, and control Defendant RGV at all relevant times with a disregard for the separate legal status of the entities, such that it would result in inequitable outcomes to not treat any act of Defendant Lawrance and Defendant Gunter as those of Defendant RGV.

30. Unity of ownership between Defendant Lawrance, Defendant Gunter, and Defendant RGV exists at all relevant times, such that Defendant Lawrance and Defendant Gunter control every facet of Defendant RGV's business.

31. Defendant RGV is a mere shell that Defendant Lawrance and Defendant Gunter use as a conduit to conduct their personal or other entities' business, property, and affairs.

32. Defendant RGV is created pursuant to a fraudulent plan, scheme, and device conceiving and operating by Defendant Lawrance and Defendant Gunter, whereby income, revenue, and profits of each are diverted by Defendant RGV to Defendant Lawrance and Defendant Gunter.

33. Defendant RGV is organized by Defendant Lawrance and Defendant Gunter as a device to avoid individual liability by substituting an inadequately capitalized corporation in place of Defendant Lawrance and Defendant Gunter.

34. Upon information and belief, Defendant RGV is insolvent or close to being insolvent. Defendant RGV is likely to have no sufficient assets available to meet its debts owed to JD at this time.

35. It would create inequitable results for Defendant RGV's creditors if Defendant Lawrance and Defendant Gunter could escape personal liability for their failure to conduct corporate business without providing any sufficient basis for the financial responsibility to the creditors.

36. Defendant RGV, Defendant Lawrance, and Defendant Gunter fail to establish or maintain the legal formalities for Defendant RGV, such as the Defendants failed to maintain minutes or adequate corporate records.

37. Defendant Lawrance and Defendant Gunter use the same office/business locations as Defendant RGV.

38. Defendant Lawrance and Defendant Gunter fail to maintain an arm's length relationship with Defendant RGV, being virtually interchangeable.

39. Defendant Lawrance, Defendant Gunter, and Defendant RGV divert assets between each other to the detriment of creditors, or manipulate assets and liabilities between each other so as to concentrate the assets in one and the liabilities in the other.

40. Defendant RGV, Defendant Lawrance, and Defendant Gunter comingle their funds, assets, and property.

41. Upholding the fiction of Defendant RGV's separate corporate existence from Defendant Lawrance and Defendant Gunter would, under the circumstances, promote injustice in that JD would be unable to realize any judgments in its favor.

## COUNT I
(Breach of Contract Against All Defendants)

42. JD realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

43. On or around June 23, 2021, JD and Defendants had signed and executed the Service Agreement.

44. Among other provisions, the Service Agreement provides the following:

"3.1 The CUSTOMER shall pay SERVICE PROVIDER the fees of the of the Services (including all fixed or minimum charges or charges arising from the minimum volume, if applicable) based on the rate agreed to by both Parties in writing prior to SERVICE PROVIDER's provision of the Services (the 'Fees')."

"3.4 Within the first five business days of each calendar month, Service Provider shall provide Customer an invoice listing each service and the corresponding Fee occurred in the immediately preceding calendar month, and Customer shall pay the Fees within fifteen (15) days following the date of the applicable invoice.  In the event of an invoice amount dispute, Customer shall notify Service Provider such dispute within five (5) days following the receipt of such invoice, otherwise Customer shall be deemed to agree with the invoice amount."

"3.5 Customer shall pay interest on all late payments at the lesser of the rate of point one percent (0.1%) per day or the highest rate permissible under applicable law, calculated and compounded daily from the date due until paid in full.  Customer shall reimburse Service Provider for all costs incurred in collecting any late payments, including, without limitation, attorneys' fees.  In addition to all other remedies available under this Agreement or at law (which Service Provider does not waive by the exercise of any rights hereunder), Service Provider shall be entitled to suspend the release of any goods and products or cease performance of any services if Customer fails to pay any amounts when due hereunder and such failure continues for ten (10) days following written notice thereof.  In addition, Service Provider reserves the right to require payment in full of all amounts owed by Customer in advance of the release of the related goods and products.  Customer shall not withhold payment of any amounts due and payable by reason of any set-off of any claim or dispute with Service Provider, whether relating to Service Provider's breach, bankruptcy, or otherwise."

"4.5 For all of the goods and products deposited with Service Provider by Customer for the warehouse service under this Agreement, Service Provider shall have a lien on the goods and products and upon the proceeds from the sale thereof to secure Customer's payment of all fees, charges and expenses hereunder in connection with the storage, transportation, preservation, and handling of the Goods as well as for like charges and expenses in relation to any other goods an [sic] products whenever deposited

with Service Provider by Customer. Service Provider may enforce this lien at any time, including by selling all or any part of the goods and products in accordance with applicable law."

"5.1 SERVICE PROVIDER shall only be liable for any claim relating to loss or damage to the Goods that were caused by SERVICE PROVIDER's default."

"5.2 a) SERVICE PROVIDER's liability to the CUSTOMER shall be limited by the Montreal Convention or the Warsaw Convention as applicable, or in the absence of such convention, to the lower of the declared value of any package or a value of $100.  It is CUSTOMER's responsibility to prove actual damages."

"5.3 Any notification of claim for damages shall be made by the CUSTOMER in writing to SERVICE PROVIDER within thirty (30) Days of the event giving rise to the claim, failing which SERVICE PROVIDER shall be discharged of all liability whatsoever howsoever arising."

"5.5 Both parties shall in no case be liable for any loss of profit, loss of sales, loss of market, loss of reputation, third party claims, incidental or special damages or indirect or consequential loss of any kind."

"12.  Choice of Law and Forum.  This Agreement and all matters pertaining hereto shall be governed by and construed in accordance with the laws of the State of California without reference to the choice of law doctrine of such state and shall be settled by a court of competent jurisdiction in Los Angeles County where exclusive venue will lie for any actions arising under this Agreement."

45.     Defendants had breached the Service Agreement by the acts set forth above.

46.     Specifically, Defendants had failed to make any payments upon the receipt of invoices of JD between December 2021 and the filing of this Complaint.

47. Defendants had breached the Service Agreement by their failure to pay invoices as issued by JD.

48. Defendants had further breached the Service Agreement by alleging frivolous excuses for their non-payment, which directly contradict the plain language of the Service Agreement and the prevailing California law.

49. On the other hand, JD had performed and satisfied all of its duties under the Service Agreement with Defendants.

50. As of the date of filing this lawsuit, Defendants are still using JD's services, such as warehousing and safekeeping of Defendants' goods.

51. As a direct and proximate result of Defendants' breach of the Service Agreement, JD has suffered and continues to suffer damages as alleged herein.

52. Pursuant to §3.5 of the Service Agreement, JD is also entitled to all costs incurred in collecting any late payments, including, without limitation, attorneys' fees.

## COUNT II
(Breach of Implied Covenant of Good Faith and Fair Dealing Against All Defendants)

53. JD realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

54. As previously alleged in greater detail, JD and Defendants had entered into the Service Agreement on June 23, 2021.

55. JD had performed and satisfied all of its duties under the Service Agreement with Defendants.

56. There exists in every contract, including the disputed Service Agreement, an implied covenant of good faith and fair dealing, requiring that each party not do anything to unfairly interfere with the right of the other party to receive the benefits of the contract.

57. The plain language of the Service Agreement specifically set forth that neither party should withhold payment of any amounts due and payable because of any set-off claims. See Ex. 1 § 3.5.

58. The plain language of the Service Agreement also specifically sets forth that neither party shall in no case be liable for any loss of profit, loss of sales, loss of market, loss of reputation, or such consequential damages. See Ex. 1 § 5.5.

59. There is an implied covenant in the Service Agreement that neither party shall use unfounded monetary claims to delay the performance of their contractual obligations.

60. Further, there is another implied covenant in the Service Agreement that neither party shall use such claims to bargain for a discount or other benefits that were not agreed upon in the Service Agreement.

61. Defendants had breached the above implied covenants by their bad faith misconduct.

62. Specifically, Defendants had intentionally used unfounded monetary claims to delay all of their payments to JD.  Defendants had agreed in the contract that they could not use "set-off" claims to withhold payments or claim consequential damages.  However, Defendants have been and are still using such claims to withhold payments for all their invoices, rather than just the ones they dispute.

63. As a logistic service provider, JD operates in a highly fluid and cash-demanding industry.  JD's daily operation relies on getting its payment in full and on time.

64. Defendants knew that logistic service providers, like JD, would commonly offer a discount to customers when facing the risks of not getting paid at all.

65. Defendants intended to use such bad faith and unfair practice to force JD to offer Defendants an unjustified discount.  By doing so, Defendants had intentionally and unfairly interfered with the right of JD to receive the benefits of the Service Agreement.

66. Indeed, Defendants had requested several times that JD must give Defendants a significant discount.  Otherwise, Defendants would not make any payments.

67. Defendants, even after multuiple requests from JD, had failed to provide any evidence to support any reasons that a discount would be justified or fair.

68. As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, JD has suffered and continues to suffer damages as alleged herein.

## COUNT III
(Unjust Enrichment Against All Defendants)

69. JD realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

70. Pursuant to the terms of the Service Agreement, JD has been providing services to Defendants.

71. Defendants had failed to make any payments to JD since December 2021.

72. As of the filing of this lawsuit, Defendants have been and are still using JD's services to benefit Defendants and their customers. Defendants are generating substantial profits at the expense of JD.

73. JD has been and is harmed by the loss of payment, time and effort for the services provided and delivered to Defendants.

74. As a direct result of Defendants' failure to pay JD for the agreed value of JD's services, JD seeks restitution of the value of the services in an amount to be proven at trial, but which is at least $153,357.61.

**PRAYER FOR RELIEF**

WHEREFORE, JD prays for judgment against all Defendants as follows:

1. For compensatory damages;

2. For punitive damages;

3. For statutory and civil penalties;

4. For pre-judgment and post-judgment interest;

5. For costs of suit and attorneys' fees;

6. For such other and further relief that the Court shall deem just and proper.

Dated: June 22, 2022
                                                            Innovative Legal Services, P.C.
                                                            /s/ Richard Q. Liu
                                                            Richard Q. Liu, ESQ
                                                            *Attorney for Plaintiff*
                                                            *Jingdong Logistics*
                                                            *United States Company*